**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ )
                                 )
TOSHIA HODGES,                   )
                                 )
                  Plaintiff,     )
                                 )
        v.                       )    Civil Action No. 12-1900 (ABJ)
                                 )
GOVERNMENT OF DISTRICT OF        )
COLUMBIA, *et al.*,              )
                                 )
                  Defendants.    )
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾)

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ )
                                 )
BARRON JACKSON,                  )
                                 )
                  Plaintiff,     )
                                 )
        v.                       )    Civil Action No. 12-1948 (ABJ)
                                 )
GOVERNMENT OF DISTRICT OF        )
COLUMBIA, *et al.*,              )
                                 )
                  Defendants.    )
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾)

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ )
                                 )
IRMA FLORES,                     )
                                 )
                  Plaintiff,     )
                                 )
        v.                       )    Civil Action No. 12-1989 (ABJ)
                                 )
GOVERNMENT OF DISTRICT OF        )
COLUMBIA, *et al.*,              )
                                 )
                  Defendants.    )
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾)

```
_____
                               )
RASHEED HAMMOND,               )
                               )
            Plaintiff,         )
                               )
      v.                       )      Civil Action No. 12-1990 (ABJ)
                               )
GOVERNMENT OF DISTRICT OF      )
COLUMBIA, et al.,              )
                               )
            Defendants.        )
_____)
```

## MEMORANDUM OPINION

Plaintiffs Toshia Hodges, Barron Jackson, Irma Flores, and Rasheed Hammond have brought four separate actions against several Metropolitan Police Department ("MPD") officers in their individual capacities and against the District of Columbia. They allege claims arising out of their arrests for disorderly conduct and their release pursuant to a "post-and-forfeit" procedure whereby an arrestee simultaneously posts and forfeits collateral in return for his release from jail without prosecution. Six of their claims are brought solely against the District of Columbia challenging the post-and-forfeit procedure. Specifically, plaintiffs assert: (1) four claims under 42 U.S.C. § 1983 on the grounds that the procedure, as applied to them, violated their Fourth and Fifth Amendment rights; (2) one claim that the procedure constituted common law conversion of their forfeited collateral; and (3) one claim that the post-and-forfeit statute is void for vagueness.[1]

The District of Columbia has moved to dismiss plaintiffs' post-and-forfeit claims under Federal Rules of Civil Procedure 12(b)(1) for lack of standing and 12(b)(6) for failure to state a claim. In support of its motion, the District points to this Court's recent dismissal of

---

[1] Plaintiffs also claim that the District regularly engages in the practice of making disorderly conduct arrests without probable cause (Count II), but that claim is not the subject of a motion to dismiss.

substantially similar claims in *Fox v. District of Columbia* ("*Fox I*"), 851 F. Supp. 2d 20 (D.D.C. 2012) and *Fox v. District of Columbia*, ("*Fox II*"), 923 F. Supp. 2d 302 (D.D.C. 2013). In that case, the plaintiff asserted that the payment of collateral under the post-and-forfeit procedure violated the Fourth, Fifth, Sixth, and Eighth Amendments and constituted common law conversion. *Fox I*, 851 F. Supp. 2d at 22; *Fox II*, 923 F. Supp. 2d at 305. After extensive briefing and a lengthy motion's hearing, this Court concluded that the post-and-forfeit procedure did not violate the plaintiff's Fourth and Fifth Amendment rights and did not constitute common law conversion because it was voluntary and it furthered the District's legitimate interests. *See Fox I*, 851 F. Supp. 2d at 23; *Fox II*, 923 F. Supp. 2d at 309–10.

Plaintiffs in this case recycle many of the arguments that the Court rejected in *Fox*. Therefore, the Court finds that although plaintiffs have standing to bring their post-and-forfeit claims, they have failed to plausibly allege that the procedure violated their rights under the Fourth and Fifth Amendments, that it constitutes conversion, or that the statute is void for vagueness. The Court will therefore grant the District's motion to dismiss those counts under Rule 12(b)(6).

In addition to the post-and-forfeit claims, plaintiff Jackson has brought a section 1983 claim against the District alleging that his arrest violated his First Amendment right to free speech. The District has also moved to dismiss that claim under Rule 12(b)(6). The Court finds that Jackson has failed to meet the standard for municipal liability under section 1983, and therefore, it will grant the District's motion to dismiss this claim. All of the plaintiffs' claims against the individual officers and their claims against the District concerning disorderly conduct arrests will remain.

# BACKGROUND

The D.C. Code expressly grants the MPD the authority to tender an offer to any arrestee charged with certain misdemeanors to "obtain a full and final resolution of the criminal charge" by agreeing to simultaneously post and forfeit an amount as collateral. D.C. Code § 5-335.01(a). This is referred to as "the post-and-forfeit procedure." It is not an admission of guilt, and it does not result in a criminal conviction. While the process does not eradicate the record of the original arrest, the statute provides that "[t]he fact that a person resolved a charge using the post-and-forfeit procedure may not be relied upon by any court . . . or agency of the District of Columbia in any subsequent criminal, civil, or administrative proceeding or administrative action to impose any sanction, penalty, enhanced sentence, or civil disability." *Id.* § 5-335.01(b).

The collateral amount for each charge is set by the Superior Court of the District of Columbia and, if not forfeited, serves as a security upon release to ensure the arrestee's appearance at trial. *Id.* § 5-335.01(a), (g). The statute requires that the MPD provide written notice to the arrestee at the time the offer is tendered. *Id.* § 5-335.01(c). The notice must include, in relevant part, the identity of the crime to be resolved, and the amount of collateral to be posted and forfeited. *Id.* § 5-335.01(d)(1). The notice must also state that the arrestee has the right to choose whether to accept the post-and-forfeit offer or to proceed with the criminal case and a potential adjudication on the merits, and that the forfeiture becomes final ninety days after the arrestee signs the notice. *Id.* §§ 5-335.01(d)(2), (6). During the ninety day period, the arrestee or the Office of the Attorney General may file a motion with the Superior Court of the District of Columbia to set aside the forfeiture and proceed with the criminal case. *Id.* § 5-335.01(d)(6).

## FACTUAL BACKGROUND

Plaintiffs allege that Metropolitan Police Department officers arrested and charged them with "disorderly conduct – loud and boisterous" without probable cause. After their arrests, they were each transported to a police station and offered the choice between posting and forfeiting $35.00 to obtain their immediate release and resolution of their criminal charges, or spending the night in jail and being transported to Superior Court for presentment the following day. Plaintiffs allege that the police officers did not offer them citation release, release on collateral (without forfeiting), or release on the Detention Journal.[2] Each of the plaintiffs elected to pay and forfeit the collateral, and they were each presented with a post-and-forfeit form that included the statutorily required notifications under section 5-335.02(d). None of them exercised their statutory right to seek to have the forfeiture set aside and contest the charges by filing a motion in Superior Court.

The factual allegations specific to each plaintiff are follows:

A.  Hodges v. District of Columbia (Civ. Action. No. 12-1900)

Plaintiff Toshia Hodges alleges that on November 26, 2009, her ex-husband called her and asked her to pick up his daughter from his mother's house in the southeastern part of the District of Columbia. Hodges Am. Compl. [Dkt. # 18] ¶ 17. She explains that the police had been called to the house because of a "situation" involving her ex-husband, his daughter, and other members of his family. Id. ¶ 19. When she arrived at the house, she allegedly witnessed police officers "abusing [her ex-husband] physically and verbally." Id. ¶ 21. Hodges states that after she "implored the MPD officers to get off her husband," one of the officers grabbed her, slammed her onto the police car, handcuffed her, and placed her in the police car. Id. ¶¶ 26, 30. According to Hodges, she did not touch any officers, interfere with them, or yell at them. Id. ¶¶ 27–29.

The officers transported Hodges to the police station and charged her with "disorderly conduct – loud and boisterous" under D.C. Code § 22-1321(a)(1). *See*

---

2       To make an entry in the detention journal at a police facility means that the Watch Commander determines that an arrestee should be released without charge, fills out PD Forms 728 and 731, and immediately releases the arrestee. Use of the Detention Journal, GO–PCA-502.05 (effective Nov. 22, 2002), replaced by GO–PCA–502.05 (Aug. 26, 2010).

*id.* ¶¶ 33, 42. Hodges' mother went to the police station to assist her daughter. *Id.* ¶ 34. At the station, the officer allegedly told Hodges' mother that "if her daughter 'wanted to come home tonight' she would have to pay $35.00 to 'post and forfeit' for 'disorderly conduct – loud and boisterous.'" *Id.* ¶ 35. The officers added that if Hodges did not want to forfeit the collateral, she could wait to be transported to Superior Court the following day. *Id.* ¶ 36. Hodges elected to pay the $35.00 post-and-forfeit amount and was released. *Id.* ¶ 49.

B. Jackson v. District of Columbia (Civ. Action No. 12-1948)

On the afternoon of February 21, 2010, plaintiff Barron Jackson was riding a D.C. metropolitan bus that came to a stop near the intersection of 14th Street and E Street, N.E. because a police car was allegedly partially blocking the street. Jackson Am. Compl. [Dkt. # 8] ¶¶ 19–21. According to Jackson, the bus was unable to pass by the car because another officer was standing in the street next to the car. *Id.* ¶ 22. After what he states was about ten to fifteen minutes, Jackson grew tired of waiting and exited the bus. *Id.* ¶¶ 24, 26. He then walked to the officer in the street and stated: "Why don't you move the damn car?" *Id.* ¶ 27. The officer allegedly asked Jackson to repeat his statement, and Jackson replied: "I said why don't you move the f*cking car out of the street so the bus can get by?" *Id.* ¶¶ 28–29. The officer told Jackson that he could not say that, and Jackson responded: "I can say anything I want to . . . This is the United States!" *Id.* ¶¶ 30–31.

The officers arrested Jackson for "disorderly conduct – profane language" under D.C. Code § 22-1321 and transported him to the police station, where they held him for several hours. *Id.* ¶¶ 44, 49, n.2. At the station, the officers offered Jackson the option between posting and forfeiting $35.00 on the disorderly conduct charge or spending the night in jail and then being transported to Superior Court the next day. *Id.* ¶ 50. Jackson paid the $35.00 post-and-forfeit amount to obtain his immediate release. *Id.* ¶ 60.

C. Flores v. District of Columbia (Civ. Action No. 12-1989)

On the evening of January 13, 2010, plaintiff Irma Flores was exiting a restaurant on Georgia Road, N.W. with her boyfriend and some other friends when she allegedly saw several officers outside the restaurant "hassling passer[s]by." Flores Am. Compl. [Dkt. # 12] ¶¶ 17, 20–21. According to Flores, two of these officers "were acting especially aggressively and they tackled [her] boyfriend . . . and threw him to the ground." *Id.* ¶ 22. She was allegedly "afraid for her safety and begged the officers to not hurt" her boyfriend, *id.* ¶ 24, but she did not touch, interfere with, or yell at the officers. *Id.* ¶¶ 27–29. The complaint states that at that point, one of the officers "threw her on the ground, put his knee on her back, put her arms behind her back and cuffed her, and put her in the police car." *Id.* ¶ 32.

The officers transported Flores to the police station and charged her with "disorderly conduct – loud and boisterous" under D.C. Code § 22-1321(a)(1). *See*

*id.* ¶ 35, 44. At the police station, the officers allegedly told Flores that she could post-and-forfeit $35.00 for the disorderly conduct charge and obtain her immediate release, or she could spend the night in jail and then be transported to Superior Court for presentment the following day. *Id.* ¶¶ 37–38. Flores elected to pay the $35.00. *Id.* ¶ 48.

### D. Hammond v. District of Columbia (Civ. Action No. 12-1990)

On December 17, 2009, plaintiff Rasheed Hamond was visiting his girlfriend in the southeastern part of the District when he heard shouts coming from somewhere in her apartment building. Hammond Compl. ¶¶ 20–21. When he and his girlfriend went to inspect the noise, they allegedly witnessed police officers mistreating the occupants of the apartment across the hallway and other members of the community. *Id.* ¶¶ 26–42. Specifically, one of the white officers allegedly told a woman on the scene that he "ought to 'lock her black ass up.'" *Id.* ¶ 45. Hammond expressed his disapproval of the officer's language and asked "to speak to someone in authority." *Id.* ¶ 46. In response, the officer arrested Hammond and took him to the police station, where he was held for almost eight hours. *Id.* ¶¶ 47, 50.

At the station, the officers gave Hammond the option to post and forfeit for "disorderly conduct – loud and boisterous" or remain in jail overnight and then go to Superior Court the next day. *Id.* ¶ 51. Hammond chose to post and forfeit the collateral amount and was released from jail early the next morning. *Id.* ¶¶ 52–53.

## PROCEDURAL BACKGROUND

In 2012, plaintiffs brought suit against the police officers involved in their arrests and the District of Columbia. The first two counts of their complaints allege that they were arrested without probable cause in violation of the Fourth Amendment, and they seek to hold the individual officers and the District liable under section 1983.[3] *See* Hodges Am. Compl. ¶¶ 100–08; Jackson Am. Compl. ¶¶ 116–24; Flores Am. Compl. ¶¶ 102–11; Hammond Compl ¶¶ 115–23. Plaintiff Jackson also brings section 1983 claims against the individual officers and the District on the grounds that his arrest violated his First Amendment right to free speech. Jackson Am. Compl. ¶¶ 150–65.

---

3   Plaintiffs Hodges and Jackson also assert a common law false arrest claim against the individual officers. *See* Hodges Am. Compl. ¶¶ 109–11; Jackson Am. Compl. ¶¶ 125–27. The District and the individual officers have not moved to dismiss the section 1983 or common law false arrest claims.

Additionally, plaintiffs have also asserted claims solely against the District alleging that the post-and-forfeit procedure, as applied to them, violated their Fourth and Fifth Amendment rights and constituted common law conversion. *See* Jackson Am. Compl. ¶¶ 128–49, 176–81, 182–86.[4] They also assert that the statute is void for vagueness. *Id.* ¶¶ 166–75.

The District has moved to dismiss plaintiffs' post-and-forfeit claims on two grounds. Def.'s Consolidated Partial Mot. to Dismiss Compls. at 2. It contends that plaintiffs do not have constitutional standing to bring those claims because they have failed to allege that they suffered an injury in fact that was caused by the post-and-forfeit procedure, and therefore the claims should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1). Mem. in Supp. of Def.'s Partial Mot. to Dismiss Compls. ("Def.'s Mem.") at 3. The District also asserts that even if plaintiffs have standing to challenge the procedure, their claims fail to state a claim upon which relief can be granted, and they should be dismissed under Rule 12(b)(6). *Id.* at 3.

Defendant has also moved to dismiss Jackson's First Amendment claim against the District under Rule 12(b)(6) for failure to state a claim. Def.'s Mem. at 3–4. In particular, the District contends that Jackson has failed to meet the standard for municipal liability under section 1983 because he has not "allege[d] a pattern and practice of District employees depriving citizens of their First Amendment right to use non-threatening profanity." Def.'s Mem. at 3–4. Plaintiffs have filed their consolidated opposition to the District's motion to dismiss, and the District has filed its reply.

---

4    Since plaintiffs' post-and-forfeit claims are identical, the Court will cite to the Jackson complaint for both his individual First Amendment claim and the common post-and-forfeit claims.

# STANDARD OF REVIEW

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (citations omitted); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

## I. Subject Matter Jurisdiction

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the

complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharm.*, *Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## II. Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' 'that the pleader is entitled to relief.'" *Id.* at 679, quoting Fed. R. Civ. P. 8(a)(2). A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.* at 678, quoting *Twombly*, 550 U.S. at 555, and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," *id.* In ruling upon a motion to dismiss, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp.

2d 191, 196 (D.D.C. 2002), citing *Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

### I. Plaintiffs have standing to challenge the post-and-forfeit procedure.

The District contends that the Court does not have jurisdiction to adjudicate plaintiffs' post-and-forfeit claims because they do not have constitutional standing to challenge the procedure. Def.'s Mem. at 3. "To state a case or controversy under Article III, a plaintiff must establish standing." *Ariz. Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 1442 (2011); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Standing is a necessary predicate to any exercise of federal jurisdiction, and if it is lacking, then the dispute is not a proper case or controversy under Article III, and federal courts have no subject-matter jurisdiction to decide the case. *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012).

To establish constitutional standing, a plaintiff must demonstrate: (1) that he has suffered an "injury in fact"; (2) that the injury is "fairly traceable" to the challenged action of the defendant; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (internal quotation marks omitted); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81 (2000). The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan*, 504 U.S. at 561. When the suit challenges the legality of government action, the standing analysis is relatively straightforward if the plaintiff himself is the object of the action in question. *Lujan*, 504 U.S. at 561. If he is, then there is "ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Id.* at 561–62.

When reviewing the standing question, the Court "must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims." *In re Navy Chaplaincy*, 534 F.3d 756, 760 (D.C. Cir. 2008). Therefore, for the purposes of the standing analysis, the Court has to assume that the District violated plaintiffs' rights under the Constitution, and at common law, by "funnel[ing] them into the 'post and forfeit' procedure." *See* Jackson Am. Compl. ¶ 131.

The District argues that "[p]laintiffs lack an injury because they failed to utilize the legal procedures available to properly challenge their respective forfeitures." Def.'s Mem. at 11. They point to D.C. Code Section 5-335.01(d)(6), which permits an arrestee who has a change of heart in the light of day to file a motion to set aside the forfeited collateral and contest the criminal case. *Id.* According to the District, plaintiffs' failure to exhaust this local remedy should bar them from pursuing their post-and-forfeit claims. *Id.*

The "exhaustion of local remedies doctrine is appropriate, as a reason for denial of Federal relief, only when there has been a failure to utilize state remedial channels that are both accessible and capable of affording a full measure of relief." *Sullivan v. Murphy*, 478 F.2d 938, 963 (D.C. Cir. 1973). In *Sullivan*, the plaintiffs argued that they had been arrested and prosecuted without probable cause and made to post-and-forfeit collateral in violation of their constitutional rights. 478 F.2d at 943 & n.4. They sought: (1) a declaration that their arrests and prosecutions were unconstitutional; (2) an enjoinment of further prosecution; (3) restitution of their forfeited collateral; and (4) expungement of their arrest records. *Id.* at 943, 962. The court held that the plaintiffs had standing to bring their claims because they sought to vindicate their constitutional rights, and federal courts have jurisdiction over claims "arising under the

Constitution of the United States." *Id.* at 960.[5] The court also found that the plaintiffs' failure to request return of the forfeited collateral within the ninety day period did not preclude them from seeking federal relief because the District had circulated misinformation about their rights pursuant to the post-and-forfeit policy and thus, the state remedial channels were not sufficiently "accessible." *Id.* at 963.

As in *Sullivan*, plaintiffs are not merely seeking a return of the forfeited collateral. They seek to vindicate the federal constitutional rights that they allege were violated as a result of the post-and-forfeit procedure, and "[t]here is undoubted jurisdiction in the Federal courts to entertain actions to enforce Federal constitutional rights." *Sullivan*, 478 F.2d at 963 (citation omitted). Plaintiffs have asked the Court to redress their constitutional injuries by, among other things, declaring that the post-and-forfeit procedure was unconstitutional as applied to them and granting them compensatory damages. *See* Jackson Am. Compl., Individual Relief Demands ¶¶ B, E. Since section 5-335.01(d)(6) is not "capable of affording a full measure of [the] relief" that plaintiffs have requested, *Sullivan*, 478 F.2d at 963 (citations omitted), the failure to exhaust this local remedy does not bar plaintiffs from seeking federal relief. Therefore, plaintiffs have standing to bring their post-and-forfeit claims because they have alleged that they suffered an injury in fact that was caused by the post-and-forfeit procedure and that is likely to be redressed by a favorable ruling in this case.

---

5    At the time of the *Sullivan* case, section 1983 did not apply to the District of Columbia. *See Sullivan*, 478 F.2d at 960, citing *District of Columbia v. Carter*, 409 U.S. 418 (1973). Therefore, the court held that it had jurisdiction over the plaintiffs' constitutional claims under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). However, *Carter* was overruled by statute, when Congress amended section 1983 to include the District of Columbia.

## II. Plaintiffs' post-and-forfeit claims fail under Rule 12(b)(6)

A. <u>The decision to post and forfeit was voluntary.</u>

The gravamen of plaintiffs' post-and-forfeit claims is that their payment of the forfeited collateral was not voluntary. *See, e.g.,* Jackson Am. Compl. ¶ 58 (alleging that the police officers "coerce[d] him into 'post and forfeiting'"); Hodges Am. Compl. ¶ 49; Flores Am. Compl. ¶ 48; Hammond Compl. ¶ 127; Pls.' Opp. at 17–25 (alleging that plaintiffs' election of the post-and-forfeit procedure was not voluntary). The District has moved to dismiss these claims on the grounds that the Court has already dismissed substantially identical claims in *Fox v. District of Columbia*. Def.'s Mem. at 3. In *Fox*, this Court dismissed all of the plaintiff's post-and-forfeit claims based, in part, on its finding that the payment of the forfeited collateral was voluntary. *See Fox I*, 851 F. Supp. 2d at 23 ("[T]here simply was no coercion, taking, or deprivation inherent in the voluntary exchange that was offered and accepted in this case"); *see also Fox II*, 923 F. Supp. 2d at 309–10.

Despite this prior holding, plaintiffs assert that their election of the post-and-forfeit procedure was not voluntary because their arrest was not supported by probable cause, and so they were entitled to release without paying or forfeiting their collateral. *See* Pls.' Opp. at 18 (asserting that "forcing an arrestee to give up a constitutional right in exchange for release (when he is entitled to release) is not a voluntary choice"). To support this assertion, plaintiffs repeat many of the arguments made by the plaintiff in *Fox*. *Compare* Pls.' Opp. at 14–23 *with* Civ. Action. No. 10-2118, Fox Mot. for Reconsideration [Dkt. # 60] at 6, 8–9, and Fox Mem. in Opp. to Def.'s Mot. to Dismiss 2d Am. Compl. [Dkt. # 46] at 34, 40–41. The Court has already considered and rejected these arguments. *See Fox I*, 851 F. Supp. 2d at 35 (explaining that the

forfeiture is not involuntary because some of the people who elect to pay it may have been arrested without probable cause).[6]

To bolster their claim that the payment was not voluntary, plaintiffs compare the post-and-forfeit procedure to "release and dismissal agreements," in which a defendant waives his right to bring a civil suit against the government and/or government officials in exchange for the dismissal of criminal charges. *See* Pls.' Opp. at 14–16, 18–20, citing *Vallone v. Lee*, 7 F.3d 196, 198–99 (11th Cir. 1993) (per curiam) (concluding that an arrestee's waiver of his right to bring suit against the county sheriff was not voluntary where the sheriff blocked his access to bail until he signed the waiver); *Hall v. Ochs*, 817 F.2d 920, 923 (1st Cir. 1987) (finding that an arrestee's waiver of his right to sue was not voluntary where he had refused to sign the agreement on two prior occasions and the officer conditioned his release on the waiver); *Brewer v. Blackwell*, 692 F.2d 387, 399 (5th Cir. 1982) (holding that an arrestee's waiver of the right to sue is not voluntary where the officer conditions his release on the waiver).

These cases are distinguishable because unlike a release and dismissal agreement, post-and-forfeit is a statutorily authorized procedure for obtaining release from jail and resolving a petty criminal charge. D.C. Code § 5-335.01. Moreover, utilizing the post-and-forfeit procedure does not result in any loss of the arrestee's right to pursue a later civil action, nor does it result in the loss of his ability to contest the validity of the arrest in the criminal case itself given the ninety day option. *See id.* § 5-335.01(d)(6).

---

6 Plaintiff Hodges argues that she was coerced into posting and forfeiting because she had to work the following day and she faced disciplinary sanctions at work if she failed to appear. Hodges Am. Compl. ¶¶ 46–48. But those possible sanctions do not render the post-and-forfeit procedure involuntary, because they derive from a source independent of the procedure. There is nothing about the procedure itself that envisions or imposes such penalties.

Contrary to plaintiffs' assertion, the fact that the arrestee is in custody when he is presented with the opportunity to post-and-forfeit does not itself make his election involuntary. *See* Pls.' Opp. at 14–15. Indeed, the statute specifically seeks to safeguard against any coercion that might result from incarceration; it provides that if an arrestee is in custody, the post-and-forfeit form must inform the arrestee that he may choose to reject the post-and-forfeit procedure and that if he chooses to do so, he may also be eligible for immediate citation release, or will be promptly taken to court for a bail hearing. D.C. Code § 5-335.01(d)(2)–(3). Moreover, the statute requires MPD to inform arrestees that they can move to set aside the forfeiture and challenge the charges against them within ninety days. *Id.* § 5-335.01(d)(6). Therefore, unlike the release and dismissal agreements, the post-and-forfeit procedure does not require an arrestee to irreversibly "give up a constitutional right in exchange for release[,]" Pls.' Opp. at 18, because the arrestee has ninety days to change his mind.

Plaintiffs acknowledge that they received the required notifications under section 5-335.01(d), and that they knew they could choose to forego the post-and-forfeit procedure. *See* Jackson Am. Compl. ¶ 50 (stating that the police gave him a choice between posting and forfeiting and proceeding with the charge against him). And as this Court has previously held, the fact that the alternative to paying the forfeiture involved a night in jail or that arrestees were not offered citation release, release on collateral (without forfeiting), or release on the Detention Journal does not make the choice to pay the forfeited collateral involuntary because arrestees have no constitutional or statutory right to citation release or to release from jail before presentment the following morning. *See Fox*, 851 F. Supp. 2d at 30; *Hunter v. District of Columbia*, 824 F. Supp. 2d 125, 136 (D.D.C. 2011); *Huthnance v. District of Columbia*, 793 F.

Supp. 2d 183, 202–03 (D.D.C. 2011).[7]  Therefore, none of the arguments that plaintiffs make in their pleadings indicates that their election to post-and-forfeit collateral under section 5-335.01 was involuntary.[8]

B.  The complaints fail to state section 1983 claims.

Section 1983 provides that any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."  42 U.S.C. § 1983 (2006).  To state a claim against a municipality under section 1983, a plaintiff must plead sufficient facts to indicate both:  (1) that he suffered a predicate violation of his rights under the constitution or federal law; and (2) that a

---

[7]    Plaintiffs assert that they have a "statutory right to collateral (without having to forfeit) and citation release for an offence like FTO [failure to obey] under D.C. Code § 23-1110."  Pls.' Opp. at 24.  According to plaintiffs, the officers coerced them into forfeiting the collateral by failing to offer them citation or collateral release.  *Id.* at 21.  But plaintiffs were arrested for disorderly conduct and not for failure to obey, so it is unclear how this argument applies.

Further, the argument is unsupported by the text of section 23-1110 or by case law.  D.C. Code § 23-1110(b)(2) states that when a person is arrested without a warrant for committing a misdemeanor and is booked and processed, a designated police officer "may issue a citation to him for an appearance in court or at some other designated place, and release him from custody."  The use of the word "may" indicates that citation release is discretionary and not guaranteed.

With respect to collateral release, plaintiffs point to a number of cases from the 1970s that state that "the police are required to advise a person arrested for a minor offense of the option of posting collateral and to give him the opportunity of exercising that option."  *See* Pls.' Opp. at 24, citing *Wash. Mobilization Comm. v. Cullinane*, 400 F. Supp. 186, 214 (D.D.C. 1975), reversed in part on other grounds by 566 F.2d 107 (D.C. Cir. 1977); and *United States v. Mills*, 472 F.2d 1231, 1240 (D.C. Cir. 1972).  But plaintiff has not explained why the post-and-forfeit procedure, which gives an arrestee the opportunity to post collateral and avoid further detention, does not fulfill this requirement.

[8]    Plaintiffs also contend that even if the payment of the forfeited collateral was voluntary, the Court should not enforce the post-and-forfeit agreement because it violates public policy by hiding police misconduct.  Pls.' Opp. at 14–16.  This argument fails because unlike release and dismissal agreements, the post-and-forfeit procedure permits arrestees to challenge the alleged police misconduct – the unconstitutional arrests – by moving to set aside the forfeiture and contest the charge.  It also does not prohibit arrestees from bringing a false arrest claim.

custom or policy of the municipality caused the violation. *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003), citing *Collins v. Harker Heights*, 503 U.S. 115, 124 (1992); *see also Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691, 694 (1978). These two requirements serve different purposes, and they must both be met. *Baker*, 326 F.3d at 1306.

The foundation for plaintiffs' section 1983 claims is that:

> The MPD implements the [post-and-forfeit] policy as follows: it arrests persons without probable cause, charges them with "disorderly conduct – loud and boisterous," . . . then funnels them into the "post and forfeit" procedure by forcing them to choose between (a) "post and forfeiting" or (b) spending a night in jail followed by transport to Superior Court for "no-papering" of their charges, because the District does not release them under the Detention Journal or offer them any other station house release option such as posting (without forfeiting) bond or collateral or citation release.

*See* Jackson Am. Compl. ¶ 131. According to plaintiffs, this implementation of the post-and-forfeit statute violated their rights under the Fourth and Fifth Amendments. Hodges Am. Compl. ¶¶ 112–33, 144–49; Jackson Am. Compl. ¶¶ 128–49, 176–81; Flores Am. Compl. ¶¶ 112–33, 144–49; Hammond Compl. ¶¶ 124–45, 156–61. Plaintiffs also allege that the post-and-forfeit procedure is void for vagueness. Hodges Am. Compl. ¶¶ 134–43; Jackson Am. Compl. ¶¶ 166–75; Flores Am. Compl. ¶¶ 134–43; Hammond Compl. ¶¶ 146–55. The Court will dismiss these claims under Rule 12(b)(6) because they fail to factually allege the necessary predicate constitutional violations, and they fail to allege that the statute is unconstitutionally vague.

     *1. The complaints fail to state a claim that the post-and-forfeit procedure, as applied, violated plaintiffs' Fourth Amendment rights.*

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. To establish an unlawful seizure under the Fourth Amendment, plaintiffs must demonstrate that payment of collateral under the District's post-and-

forfeit procedure (1) constitutes a seizure, and (2) that the seizure is unreasonable. *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 61–71 (1992). "A 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Id.* at 61, quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Further, a "seizure" is not unreasonable if it occurs with the non-coercive, voluntary consent of the owner. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 233 (1973).

In *Fox II*, the Court held that the post-and-forfeit procedure on its face did not violate the Fourth Amendment because it was voluntary, and it fulfilled the District's legitimate interests in preventing overcrowding in its jails, conserving its limited prosecutive resources, and clearing crowded court dockets. *Fox II*, 923 F. Supp. 2d at 307, citing *Fox I*, 851 F. Supp. 2d at 31–32. Unlike the facial challenge in *Fox*, here, plaintiffs assert that the application of the procedure to them violated the Fourth Amendment because: (1) "their money was seized and the seizures were not supported by probable cause"; (2) "their right to be free from seizure and detention except on probable cause" was violated; and (3) "defendant's officers held the plaintiffs . . . for an illegitimate purpose under *Riverside*." Pls.' Opp. at 25. This as-applied challenge also fails.

With respect to the first allegation, plaintiffs contend that "[d]efendant's officers unreasonably seized plaintiffs' $35.00 without probable cause when they took plaintiffs' $35.00 for 'post and forfeit.'" Pls.' Opp. at 26–27. They point to *Qutb v. Ramsey*, in which the plaintiff alleged that D.C. police officers towed his car without probable cause in violation of his Fourth Amendment rights. 285 F. Supp. 2d 33, 40 (D.D.C. 2003). The *Qutb* court held that the towing of the car was unquestionably a seizure, *id.* at 38 n.5, but that the seizure would be constitutionally permissible if the officers had probable cause to tow the car pursuant to 18 D.C. Mun. Regs. § 2421.1 based on the facts known to them at the time, *id.* at 38–39. In other words,

the finding that there had been a seizure was the predicate for going on to consider the probable cause issue, which the Court ultimately concluded it was not able to resolve on the record before it. *Id.* at 39–40.

Therefore, *Qutb* is distinguishable. Here, the Court has already determined that accepting the voluntarily tendered post-and-forfeit collateral is not a seizure of property, *see Fox II*, 923 F. Supp. 2d at 309, and that even the fact that the individual may have been arrested without probable cause does not make the payment involuntary. *Supra* Analysis § II(A). Furthermore, even if the acceptance of the forfeiture constituted a seizure, it was reasonable. In *Qutb*, the court explained that since the legal justification for the towing of the car was a violation of D.C.'s laws and regulations, the seizure would have been reasonable if the officers had probable cause to believe that such a violation had occurred. 285 F. Supp. 2d at 38–39. Here, D.C. Code § 5-335.01(a) authorizes MPD to accept forfeited collateral from individuals "charged with certain misdemeanors." Since plaintiffs acknowledge that they were charged with misdemeanors for which post-and-forfeit is available and that they chose to pay the forfeiture after receiving the requirement disclosures,[9] the legal predicate for the post-and-forfeit procedure was fulfilled, and the use of the procedure did not constitute an unreasonable seizure.[10]

The two remaining allegations – that they were seized without probable cause and held for an illegitimate purpose – are not relevant to the post-and-forfeit claims because they do not assert that the forfeited collateral was unreasonably seized. Instead, they relate to the reasonableness of plaintiffs' detention, which is relevant to their false arrest claims. Therefore,

---

9       *See, e.g.*, Jackson Am. Compl. at 8 n.2, Hodges Am. Compl. ¶ 42, Flores Am. Compl. ¶ 44.

10      The Court notes that the question of whether the charges against plaintiffs were supported by probable cause goes to whether they should have been detained, and it is therefore properly analyzed as part of plaintiffs' false arrest claims.

the Court finds plaintiffs have not plausibly alleged that the post-and-forfeit procedure as applied to them violated the Fourth Amendment.[11]

2. *Plaintiffs have failed to plausibly allege that the post-and-forfeit procedure as applied to them violated their due process rights guaranteed by the Fifth Amendment.*

i. Substantive Due Process

Plaintiffs contend that they were deprived of a fundamental right to the forfeited collateral because the post-and-forfeit procedure is "an arbitrary use of governmental power and is not rationally related to legitimate governmental interests." Pls.' Opp. at 33; *see also* Jackson Compl ¶¶ 138–40. "[T]he Due Process Clause provides that certain substantive rights – life, liberty and property – cannot be deprived except pursuant to constitutionally adequate procedures."[12] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). The substantive component of the Due Process Clause "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Collins*, 503 U.S. at 125 (internal quotation marks and citations omitted). In other words, there are some interests that are so fundamental that the government cannot invade them even if it follows a seemingly fair process. Thus, in substantive due process cases, the Supreme Court requires a "careful description" of the asserted fundamental interest to be protected. *See Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (citations omitted). This Court has previously held that the post-and-forfeit procedure does not deprive an arrestee of any fundamental interest because there is no

---

11      The Court will not address plaintiffs' remaining arguments because they are identical to arguments made by the plaintiff in *Fox*, which the Court already considered and rejected. *Compare* Pls.' Opp. at 27–31 *with* Civ. Action No. 10-2118, Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss 2d Am. Compl. [Dkt. # 46] at 13, 17–19, 35–36 and *Fox II*, 923 F. Supp. 2d at 307–308; *see also Fox I*, 851 F. Supp. 2d at 31–32.

12      Because the District of Columbia is a political entity created by the federal government, it is subject to the Fifth Amendment. *See Propert v. Dist. of Columbia*, 948 F.2d 1327, 1330 n.5 (D.C. Cir. 1991), citing *Bolling v. Sharpe*, 347 U.S. 479, 499 (1954).

fundamental interest in the modest forfeiture amount of $35.00 or in being released on citation, on collateral (without forfeiting), or before presentment the following morning. *See Fox I*, 851 F. Supp. 2d at 30.

Where there is no fundamental interest at stake, the Court assesses whether the legislation is arbitrary. *See Idris v. City of Chicago*, 552 F.3d 564, 566 (7th Cir. 2009). This Court has also previously ruled that the District's acceptance of an arrestee's voluntarily tendered collateral is not an arbitrary deprivation of property because it fulfills the government's legitimate interests in preventing overcrowding in its jails, conserving its limited prosecutive resources, clearing crowded court dockets, and protecting the health, safety, and morals of the community. *Fox I*, 851 F. Supp. 2d at 31–32. Plaintiffs concede that the District has these legitimate interests, but they argue that the post-and-forfeit procedure "does not even satisfy the rational basis test because forcing people arrested on disorderly conduct without probable cause to 'post and forfeit' on disorderly conduct is not rationally related to either of these interests." Pls.' Opp. at 33–37.

But as this Court has already stated, "the procedure itself is not rendered constitutionally infirm for substantive due process purposes simply because some of the people who choose to pay the money may have been arrested without probable cause. The risk of an erroneous deprivation is one of the factors that the Court weighs in the procedural due process inquiry, not the substantive due process inquiry." *Fox I*, 851 F. Supp. 2d at 32. And, as has been pointed out above, any individual who maintains that he was arrested without probable cause retains the right to retrieve his collateral and test the charge in court, even after he has received the benefit of the earlier release. Therefore, plaintiffs have failed to provide any arguments or facts to warrant

reversal of the Court's decision that the post-and-forfeit procedure does not violate an arrestee's substantive due process rights.

ii. Procedural Due Process

Next, plaintiffs allege that the District's application of the post-and-forfeit procedure to their case violated their procedural due process rights because the District did not provide pre- or post-deprivation process. Pls.' Opp. at 37–46. The Court has already determined that the post and forfeit procedure – both on its face and as applied to individuals who may have been arrested without probable cause – satisfies the procedural due process standards established by *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) and *Medina v. California*, 505 U.S. 437, 445–46 (1992). *See Fox I*, 851 F. Supp. 2d at 33–36. Further, with respect to plaintiffs' allegations about the lack of pre-deprivation process, this Court specifically held that the addition of a pre-deprivation hearing "would not lower the risk of an erroneous deprivation very much, if at all." *See Fox I*, 851 F. Supp. 2d at 34. So the Court need not address plaintiffs' repetition of the arguments already made and rejected in *Fox*. *Compare Fox I*, 851 F. Supp. 2d at 34 *with* Pls.' Opp. at 37–46.

Plaintiffs' allegation regarding the insufficiency of the post-deprivation process also fails. They contend: "[t]he District did not provide any post-deprivation process to [plaintiffs] by providing [them] a refund and damages for [their] arrest and forced 'post and forfeit' because a motion to set aside the forfeiture under D.C. Code § 5-335.01(g) reinstates the prosecution and does not provide damages." Jackson Am. Compl. ¶ 148. But this contention does not make sense since the property plaintiffs claim they were deprived of without due process was the $35.00. Pls.' Opp. at 39. To the extent they are alleging the deprivation of a liberty interest without due process, utilizing post-and-forfeit accomplished their release before they could have

been brought before the court in the morning, and still offered them the option of challenging the arrest later. D.C. Code § 5-335.01(d)(6) allows an arrestee who changes his mind about the forfeiture to return to the status quo prior to his payment of the forfeited collateral: he can get a refund and proceed with the charge against him. Since section 5-335.01 does not provide the legal basis for the underlying arrest, it need not provide a remedy for that arrest, and its failure to do so does not make it procedurally insufficient.[13]

iii. "Complete lack of process"

In a count titled "complete lack of process," plaintiffs allege that "[a]llowing the MPD to use the coercive powers of the criminal justice system by arresting [them] without probable cause and then to abandon all procedural protections guaranteed accused persons under the Fifth Amendment by forcing [them] to 'post and forfeit' on an offense [they] did not commit violates the due process clause of the Fifth Amendment." Jackson Am. Compl. ¶ 180. In the opposition memorandum, plaintiffs explain that this claim is based on the Fifth Amendment right to "certain basic substantive and procedural protections before the government can deprive persons of property or liberty in connection with an arrest." Pls.' Opp. at 49. The District has moved to dismiss this claim on the grounds that it is "merely a re-packaging" of plaintiffs' other Fifth Amendment claims. Def.'s Mem. at 20; Def.'s Reply at 12. The Court agrees, and it will dismiss it for the same reasons it dismissed those counts. It also underscores that there is a count in all of these complaints addressing an alleged pattern and practice of making disorderly

---

[13] Plaintiffs also assert that the notice they received on their post-and-forfeit form was insufficient because it did not inform them of their statutory right to release on collateral (without forfeiting) under D.C. Code § 23-1110. Pls.' Opp. at 24, 37. This Court has already determined that D.C. Code § 23-1110 does not grant plaintiffs the right to release on collateral without forfeiting. *See supra* n.7. In any event, pursuant to D.C. Code § 5-335.01(d)(3), the post and forfeit form must notify an arrestee who is in custody that if he elects to proceed with the criminal case, "he or she may also be eligible for prompt release on citation, or will be promptly brought to court for determination of bail[.]"

conduct arrests without probable cause, ostensibly facilitated by the use of the post-and-forfeit procedure, which is not the subject of this motion and will be left standing after the entry of the Court's order.

### 3.  *The post-and-forfeit procedure is not void for vagueness.*

Plaintiffs next assert that the post-and-forfeit statute is void for vagueness.  Jackson Am. Compl. ¶¶ 166–175.  The "void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (citations omitted).  The purpose of the doctrine is to prevent "'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'"  *Id.* at 358, quoting *Smith v. Goguen*, 415 U.S. 566, 575 (1974).

Plaintiffs point out that in *Kolender*, the Court held that a criminal disorderly conduct statute that permitted police officers to arrest individuals who failed to provide "credible and reliable" identification was unconstitutionally vague because it failed to describe with sufficient particularity what an individual must do to satisfy the identification requirement.  461 U.S. at 361.  In *Washington Mobilization Committee v. Cullinane*, the court considered a regulation that prohibited citizens from crossing a police line without authority and required them to obey any police order "necessary" to effectuate the purposes of the line.  566 F.2d 107, 118 (D.C. Cir. 1977).  It held that the regulation's use of the word "necessary" did not give the police unfettered discretion because the regulation only allowed police officers to establish police lines to accomplish specified and narrow purposes and to issue orders related to the accomplishment of those goals.  *Id.* at 118–19.

But unlike the statutes in *Kolender* and *Cullinane*, D.C. Code § 5-335.01 is not a "penal statute." It does not criminalize or require certain actions, and it cannot form the basis for an arrest or prosecution. *See* Black's Law Dictionary 1544 (9th ed. 2009) (defining penal statute as a "law that defines an offense and prescribes its corresponding fine, penalty, or punishment"). Therefore, the void for vagueness doctrine does not apply.

Even if the doctrine applied, plaintiffs' claim would still fail because the statute is not vague. The statute provides that "a person charged with certain misdemeanors may simultaneously post-and-forfeit an amount as collateral . . . and thereby obtain a full and final resolution of the criminal charge." D.C. Code § 5-335.01(a). This language defines the procedure "with sufficient definiteness that ordinary people can understand" what it is and how it operates; it explains who is eligible and what arrestees get in exchange for the forfeited collateral. The statute also limits police discretion by requiring the Chief of Police to publish a list of the misdemeanor charges that may be resolved using the post-and-forfeit procedure and the amount of collateral associated with each charge. *Id.* § 5-335.01(g).

Plaintiffs maintain that the statute is vague because it allows police officers to arrest an individual for one charge and then offer him the chance to post-and-forfeit on another charge that is not supported by probable cause. Jackson Am. Compl. ¶ 174. But the statute does not authorize such behavior. It requires the officer to identify the misdemeanor crime to be resolved using the post-and-forfeit procedure, D.C. Code § 5-335.01(d)(1), and if an individual believes that there is no probable cause to arrest or charge him with that offense, he may bring a false arrest claim or a malicious prosecution claim (if applicable). *See Pitt v. District of Columbia*, 491 F.3d 494, 510–11 (D.C. Cir. 2007). Therefore, the statute is not void for vagueness because it is not "an unrestricted delegation of power, which in practice leaves the definition of its terms

to law enforcement officers, and thereby invites arbitrary, discriminatory and overzealous enforcement." *See Cullinane*, 566 F.2d at 117 (citation omitted).[14]

C. Conversion

In addition to their section 1983 claims, plaintiffs also assert a common law conversion claim: "The District is liable in conversion for illegally taking money from [plaintiffs] pursuant to the 'post and forfeit' procedure as applied to [them]. The District, through its agents, participated in (1) an unlawful exercise, (2) of ownership, dominion, or control, (3) over the personal property of [plaintiffs], (4) in denial or repudiation of [their] rights thereto." Jackson Am. Compl. ¶¶ 183–84. The only difference between this claim and the conversion claim in *Fox* is the addition of the words "illegally" and "as applied to [them]." *See Fox II*, 923 F. Supp. 2d at 309. The Court has already held that a "'formulaic recitation of the elements of [the] cause of action,' is insufficient to state a claim for conversion." *Id.*, citing *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555. And merely inserting the conclusory words "illegally" and "as applied" do not add any factual substance to the claim.

Moreover, plaintiffs' opposition memorandum repeats, word for word, the *Fox* plaintiff's argument regarding the conversion claim. *Compare* Pls.' Opp. at 50–53 *with* Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss Sec. Am. Compl. [Dkt. # 46], Civ. Action No. 10-2118 at 44–46. These arguments were unpersuasive in *Fox*, and they remain so here. *See Fox II*, 923 F. Supp. 2d at 310.

---

14      Plaintiffs further contend that "the only way to save the statute from over breadth and vagueness is limiting it to charges supported by probable cause named in the post and forfeit form." Pls.' Opp. at 48. Adding language to this effect would be redundant because criminal charges must be supported by probable cause. *See Pitt*, 491 F.3d at 511, quoting *Castellano v. Fragozo*, 352 F.3d 939, 953–54 (5th Cir. 2003) (en banc) ("The initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection–the Fourth Amendment if the accused is seized and arrested, for example. . . .").

### III. Plaintiff Jackson's First Amendment Claim

Plaintiff Jackson contends that a D.C. police officer arrested him for using profanity in violation of the First Amendment right to free speech, and he seeks to hold the District liable for that alleged constitutional violation under section 1983. Jackson Am. Compl. ¶¶ 151, 160–64. The District has moved to dismiss this count on the grounds that Jackson has failed to plausibly allege that the alleged First Amendment violation was caused by a District policy or custom. Def.'s Mem. at 20–21.

To state a claim against a municipality under section 1983, a plaintiff must plead sufficient facts to indicate that the municipality was acting in accordance with an official government policy or custom, and that it was the policy that caused the claimed constitutional deprivation. *See Monell*, 436 U.S. at 691, 694. Indeed, the policy or custom must be "the moving force behind the constitutional violation." *Carter*, 795 F.2d at 122, quoting *Monell*, 436 U.S. at 694; *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) (requiring an affirmative link between the city's policy and alleged constitutional violation).

A municipality cannot be liable for the unconstitutional conduct of its employees based simply on a *respondeat superior* or vicarious liability theory. *Monell*, 436 U.S. at 693; *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989). "[W]hile Congress never questioned its power to impose civil liability on municipalities for their *own* illegal acts, Congress did doubt its constitutional power to impose such liability in order to oblige municipalities to control the conduct of *others*." *Pembaur v. City of Cincinnati*, 475 U.S 469, 479 (1986) (emphasis in original). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id*.

The fact that this claim arises under section 1983 does not relieve Jackson of the obligation to satisfy the criteria established in *Iqbal* and *Twombly*.

> To be sure, the D.C. Circuit previously held that a plaintiff need only plead that a municipality "'knew or should have known' about the ongoing constitutional violations" to sustain a claim for *Monell* liability predicated on deliberate indifference. *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004) ("It is of no moment that Warren's allegation of actual or constructive knowledge on the part of the District was conclusory."). But *Warren* preceded *Iqbal*, and must now be interpreted in light of that subsequent Supreme Court decision. Under *Iqbal*, such conclusory pleadings are no longer sufficient to state a claim on which relief may be granted . . . . This Court concludes that, notwithstanding *Warren*, the sufficiency of [plaintiff's] allegations here must be assessed under the standard set by the Supreme Court in *Twombly* and *Iqbal*.

*Smith v. District of Columbia*, 674 F. Supp. 2d 209, 214, n.2 (D.D.C. 2009); *Faison v. District of Columbia*, 907 F. Supp. 2d 82, 85 (D.D.C. Nov 30, 2012). This Court agrees and notes that a similar analysis has been articulated by other courts. *See Canas v. City of Sunnyvale*, Civ. No. 08-5771, 2011 WL 1743910, at *5–6 (N.D. Cal. Jan. 19, 2011); *In re Dayton*, 786 F. Supp. 2d 809, 819–23 (S.D.N.Y. 2011); *Santiago v. City of New York*, 09 Civ. 856, 2009 U.S. Dist. LEXIS 75372, at *7 (E.D.N.Y. Aug. 18, 2009).[15]

---

15      It is true that in *Modd v. County of Ottawa*, Civ. No. 10-337, 2010 WL 5860425, at *7 (W.D. Mich. Aug. 4, 2010), the court was of the view that *Twombly* and *Iqbal* should be read in conjunction with earlier cases on the sufficiency of municipal liability allegations, in particular, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993), "such that allegations of municipal policy or custom must be sufficient to raise a 'plausible' inference that officers were acting pursuant to municipal custom or policy . . . , [but a]t the pleading stage, . . . no more is necessary." *Modd*, 2010 WL 5860425, at *7. This Court is not confident that the *Leatherman* test survives *Twombly* and *Iqbal*. But even if the *Modd* court adopted the right approach, its holding that the complaint in that case was sufficient can be distinguished from the instant case. In that case, the plaintiff alleged the existence of a policy or practice of withholding or denying prescription medication from prisoners. *Id.* The complaint alleged that not only was he denied all prescription medication for a seven-day period, but that on at least twelve occasions prior to plaintiff's incarceration, other incoming inmates at the jail in question "were denied medications which had been prescribed for them." *Id.* The court held that those factual allegations were sufficient to meet the burden to allege "a plausible claim of a county custom or policy." *Id.* But here, plaintiff has alleged nothing specific beyond his individual arrest.

The complaint alleges that the District is liable for the violation of Jackson's First Amendment rights because his arrest was effectuated "pursuant to a pattern and practice of the MPD in which the District acquiesces." Jackson Am. Compl. ¶ 161. The first problem with this allegation is that acquiescence is not causation; it is essentially a vicarious liability allegation. Moreover, Jackson does not provide any factual allegations to support this conclusion. He does not provide any facts to indicate that the District had a pattern and practice of arresting people for engaging in speech protected by the First Amendment; in fact, he does not provide any facts to support this claim beyond the details surrounding his individual arrest. Therefore, Jackson has failed to plausibly allege that the violation of his First Amendment rights was caused by a pattern and practice of the District.

The complaint also contends that Jackson's alleged unconstitutional arrest was caused by a District policy. He points to the disorderly conduct statute, D.C. Code § 22-1321, as the District policy and alleges that the "statute, as applied to Mr. Jackson, violated his First Amendment rights." Jackson Am. Compl. ¶ 163.[16] A municipality may be held liable under section 1983 when "'the action that is alleged to be unconstitutional implements or executes a[n] . . . ordinance . . . officially adopted and promulgated by that body's officers.'" *Barnes*, 793 F. Supp. 2d at 281, quoting *Monell*, 436 U.S. at 690; *see also Baker*, 326 F.3d at 1306 (holding that a municipality may incur liability under section 1983 by "the explicit setting of a policy by the government that violates the Constitution").

---

16    Both parties refer to the disorderly conduct statute as D.C. Code § 23-1331(1). *See* Jackson Am. Compl. ¶ 160; Pls.' Opp. at 54–56; Def.'s Reply at 14. However, D.C. Code § 23-1331(1) defines the term "judicial officer" for the purpose of Release and Pretrial Detention. Therefore, the Court will assume that the parties are referring to D.C. Code § 22-1321, which is the disorderly conduct statute.

Jackson relies on *Daskalea v. Washington Humane Society*, 480 F. Supp. 2d 16 (D.D.C. 2007) and *Barnes*, 793 F. Supp. 2d at 260 to support his position. In *Daskalea*, the plaintiffs alleged that the District was liable for the Washington Humane Society's execution of the District's animal cruelty law because the law itself was facially unconstitutional. 480 F. Supp. 2d at 29. The court held that "[b]ecause a legislative enactment that is unconstitutional constitutes 'the explicit setting of policy,' Plaintiffs have adequately alleged that the District of Columbia 'caused' the constitutional violation" and therefore the District may be held liable under section 1983. *Id.*, quoting *Baker*, 326 F.3d at 1306.

In *Barnes*, the class action plaintiffs alleged the District's Department of Corrections violated their substantive due process rights by detaining them after they were ordered released by a court or their sentences expired. 793 F. Supp. 2d at 266. They sought to hold the District liable under section 1983 on the grounds that "the due process rights of certain overdetained class members were violated as a direct result of the District's '10 p.m. cut-off' ordinance," which prohibited the release of individuals between 10:00 p.m. and 7:00 a.m. *Id.* at 268, 272, 277. The court held that the District could be held liable because the "10 p.m. cut-off rule" was an "'express municipal policy' that could lead to Section 1983 liability for the District, whether or not the District was 'deliberately indifferent' to the overdetention problem. . . . Overdetentions caused by the District's ordinance are clearly constitutional violations executed in accordance with District policy officially adopted and promulgated by the Council." *Id.* at 282.

In both *Daskalea* and *Barnes*, the court held that the District could be liable under section 1983 because the plaintiffs alleged or demonstrated that the constitutional violations were caused by a District policy. Jackson's case is distinguishable because he failed to allege causation.

Unlike the plaintiffs in *Daskalea* who alleged that their injuries had been caused by the District's enactment of a facially unconstitutional statute, 480 F. Supp. 2d at 29, here, the complaint does not allege that the disorderly conduct statute is unconstitutional on its face. Rather, it alleges that the "statute, *as applied* to Mr. Jackson, violated his First Amendment rights." Jackson Am. Compl. ¶ 163 (emphasis added).

Further, unlike in *Barnes* where the overdetention was caused by an ordinance that required the continued detention of individuals who were entitled to immediate release, 793 F. Supp. 2d at 268, here, Jackson has not explained how the disorderly conduct statute mandates, or even permits, arrests for speech protected by the First Amendment.[17] He has only alleged that he was arrested under the disorderly conduct statute and that the arrest violated his First Amendment rights, but he has failed to make the causal connection between the statute and the constitutional violation.

In his opposition memorandum, Jackson attempts to alter his claim by arguing that "[t]he District is liable under § 1983 because [the police officer] arrested Mr. Jackson pursuant to DC Code § 23- 1331(1) [sic] and DC Code § 23- 1331(1) [sic] is unconstitutional because it criminalizes speech protected by the First Amendment."[18] Pls.' Opp. at 54–56. But this allegation is not in the complaint, and "'[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 74 n.25 (D.D.C. 2007) (alteration in original), quoting *Arbitraje Casa de Cambio, S.A. v.*

---

17    The disorderly statute provides:  "In any place open to the general public, and in the communal areas of multi-unit housing, it is unlawful for a person to: (1) Intentionally or recklessly act in such a manner as to cause another person to be in reasonable fear that a person or property in a person's immediate possession is likely to be harmed or taken."  D.C. Code § 22-1321(a)(1).

18    The Court will assume that plaintiffs are referring to the disorderly conduct statute, D.C. Code § 22-1321 and not D.C. Code § 23-1331(1).  *See supra* n.16.

*U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003). Therefore, the Court will dismiss Jackson's First Amendment claim against the District without prejudice under Rule 12(b)(6) because it fails to plausibly allege that his constitutional injury was caused by a municipal custom or policy.

## CONCLUSION

For the reasons stated above, the Court will grant the District's motion to dismiss plaintiffs' post-and-forfeit claims and plaintiff Jackson's First Amendment claim for failure to state a claim under Rule 12(b)(6). A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: September 30, 2013